IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COLLEEN LITTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 598 |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Colleen Little ("Little") alleges that defendant Wal-Mart Stores, Inc. ("Wal-Mart") is liable for injuries Little sustained when she "tripped on the raised edge of a floor mat" at a Wal-Mart store located at 9450 West Joliet Road in the Village of Hodgkins, Illinois, on February 2, 2007. (Dkt. No. 24 ("First Am. Compl.") ¶¶ 1, 6.) This court has jurisdiction over Little's state law claims for negligence (Count I) and premises liability (Count II) pursuant to 28 U.S.C. § 1332(a), as the parties are of diverse citizenship and the amount in controversy exceeds $75,000. Now pending before the court is Wal-Mart's motion for summary judgment. (Dkt. No. 52.) For the reasons set forth below, Wal-Mart's motion is denied.

BACKGROUND

On February 2, 2007, Little arrived at the Hodgkin's Wal-Mart around 3:45 p.m., where she proceeded to cash a check at the Courtesy Desk in the front of the store. (Dkt. No. 54 ("Wal-Mart's SMF") ¶¶ 10a, 10c.) As she left the store, Little tripped and fell on a mat in the vestibule area of the store. (*Id.* ¶ 10f.) Little reported to Wal-Mart employees that she sustained a

1

"sore/painful upper right arm" due to her fall. (Dkt. No. 63 at 15-19 ("Little's Add'l Facts") ¶ 30.)

The outside weather on February 2, 2007, was dry, and Little was walking at a normal pace at the time she fell. (Wal-Mart's SMF ¶¶ 10b, 10d.) Little was not carrying anything other than her purse. (*Id.* ¶ 10b.) Little did not notice any "lips or areas that extended up" on the mat before she tripped and fell. (Wal-Mart's Ex. F ("Little Dep.") at 132:2-7; *see also* Little's Add'l Facts ¶ 1.) After her fall, Little looked back to see what had caused her fall and noticed that one area of the mat was puckered up about two inches from the rest of the mat. (Wal-Mart's SMF ¶¶ 10g, 10h.)

The mats used by Wal-Mart in the vestibule area of the Hodgkin's store were comprised of multiple pieces that attached together at seams. (Little's Add'l Facts ¶¶ 4-5, 8.) The mats were not attached to the floor, but were secured in place by an aluminum framing that surrounded the mats. (*Id.* ¶ 6; *see also* Dkt. No. 65 ("Wal-Mart's Resp. to Little's Add'l Facts") ¶ 6.) The mats were clicked in place at each end of the mat, with "little pieces of metal" that were located one at each corner and one in the middle. (Wal-Mart's Ex. H ("Simpson Dep.") at 31:8-33:19; *see also* Little's Add'l Facts ¶¶ 12-13; Wal-Mart's Resp. to Little's Add'l Facts ¶¶ 12-13.) The mats were approximately one-quarter inch to one-half inch think. (Wal-Mart's SMF ¶¶ 13e, 19d.)

Once a week, Wal-Mart employees lifted the mats to clean the area underneath. (Little's Add'l Facts ¶ 9.) The mats were also taken out of their framing, in sections, every three to six months for cleaning. (*Id.* ¶¶ 10-11.) After cleaning, the mats were clicked back into place. (*Id.* ¶ 12.)

Arturo Moreno ("Moreno") worked the night shift in the maintenance department of the Hodgkins Wal-Mart store from 2000–2009. (Wal-Mart's SMF ¶¶ 19a, 19b.) As part of his job, Moreno cleaned the mats in the vestibule once per week. (Little's Add'l Facts ¶ 18.) Several times per year, as he was cleaning the vestibule, Moreno noticed that the mats had separated at the seams. (*Id.* ¶ 17; Wal-Mart's Resp. to Little's Add'l Facts ¶ 19.) From 2006–2007, this type of separation occurred "about once a week, and then sometimes it was once a month."[1] (Little's Add'l Facts ¶ 19; *see also* Wal-Mart's Ex. K ("Moreno Dep.") at 20:9-11.) The width of the separation between the mats was approximately one-half inch and went all the way across the seam. (Little's Add'l Facts ¶ 20.) When Moreno witnessed a separation in the seams, he corrected it by pushing the mats together with his hands. (*Id.* ¶ 16; Wal-Mart's Resp. to Little's Add'l Facts ¶ 16.) Moreno testified that he never witnessed one seam up higher than the other. (Wal-Mart's SMF ¶ 19e.)

Jack Simpson ("Simpson") has worked as a maintenance associate for Wal-Mart for approximately seven years. (*Id.* ¶ 13a.) As part of his duties, Simpson was responsible for cleaning the vestibule area, including the rubber mats, when the store was closed. (*Id.* ¶ 13b.) Simpson would lift the mats up and clean out the area under them from time to time, but not on a

---

[1] Moreno's actual testimony on this point is unclear. Moreno was asked, "If you had to estimate how many times per year in 2006 and 2007 that you saw a space where they should be pushed together, give me a number estimate." (Moreno Dep. 20:1-4.) Moreno responded, through an interpreter, "Well, there were times that I would be sent over about once a week, and then sometimes it was once a month, and sometimes it was later." (*Id.* at 20:9-11.) Moreno had earlier testified that he cleaned the vestibule "whenever they would send us to go do it." (*Id.* at 10:11-14.) It is therefore unclear whether Moreno is estimating the number of times that he was sent to clean the vestibule, the number of times that he observed a space between the mats, or both. The court views this testimony in the light most favorable to Little, the non-moving party, for purposes of summary judgment.

daily or weekly basis. (*Id.* ¶ 13c.) Two to three times per year, Simpson noticed that the mats had separated at the seams. (Little's Add'l Facts ¶ 22.) The width of the separation between the mats was approximately one-eighth inch to one-quarter inch. (Wal-Mart's Resp. to Little's Add'l Facts ¶ 22.) Simpson also testified that he observed a "portion of the mat raised up from another portion of the mat," such that "one mat [was] laying on top of the other height-wise." (Simpson Dep. 64:16-20.) The associated height difference was "less than a quarter inch or inch." (*Id.* at 64:23-65:12.) Whenever Simpson observed a separation at the seams of the mats, he got down and put the seams back together and stood on them with his body weight to make sure there was not a trip hazard. (Little's Add'l Facts ¶ 21.)

Other Wal-Mart employees, including overnight maintenance associate Bernardino Aquilar, maintenance associate Pablo Franco, and sales associate/cart attendant Nathan Van Amburg do not recall ever seeing the seams of the mats in the vestibule separated. (Wal-Mart's SMF ¶¶ 16, 17a, 17d, 22, 23a, 23c, 26, 27a, 27b.) These employees either did not participate in cleaning the mats and the area underneath the mats, or did so only on rare occasions. (*Id.* ¶¶ 17c, 23b; Dkt. No. 63 ("Little's Resp. to Wal-Mart's SMF") ¶ 27b.) Maintenance associate Catherine Rodriquez testified that Wal-Mart maintenance associates working during store hours would perform security sweeps and check store aisles, bathrooms, and the vestibule area for any hazards on the floor. (Wal-Mart's SMF ¶¶ 21a, 21b.)

According to Little, the mat in the vestibule on February 2, 2007, was worn, old, and dirty at the time of her fall. (*Id.* ¶ 32.)

## LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'material' only if the dispute's resolution might change the outcome of the suit under the governing law." *Spivey v. Adaptive Marketing LLC*, 622 F.3d 816, 822 (7th Cir. 2010). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007).

When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

Because the court's jurisdiction is based on diversity of citizenship, the court applies state law to all substantive issues. *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010). The parties have identified no conflict of laws, therefore Little's claims are governed by Illinois law. *Id.*

"Under Illinois law, a business owes the public 'the duty of exercising reasonable care in maintaining the premises in a reasonably safe condition.'" *Lane v. Hardee's Food Systems, Inc.*, 184 F.3d 705, 707 (7th Cir. 1999) (quoting *Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 437 (Ill. 1958), and citing Illinois Premises Liability Act, 740 ILCS 130/2 (1995)). A plaintiff alleging that he or she was injured on the defendant's premises due to an unsafe condition may

5

have a cause of action against the defendant for negligence or premises liability, depending on the source of the unsafe condition and whether the defendant had actual or constructive notice of the unsafe condition. *Donoho*, 148 N.E.2d at 437-38.

"For negligent placement of items on the floor, Illinois law holds [defendants] liable 'if the [P]laintiff can show that the substance was placed on the premises through the [D]efendant's negligence.'" *Johnson v. United States*, No. 98 C 2572, 1999 WL 446694, at *3 (N.D. Ill. June 23, 1999) (Coar, J.) (quoting *Wind v. Hy-Vee Food Stores, Inc.*, 650 N.E.2d 258, 262 (Ill. App. Ct. 3d Dist. 1995)). In such cases, the plaintiff does not need to prove that the defendant had actual or constructive notice of the unsafe condition; rather, the "ordinary negligence cause of action" applies. *Reed v. Wal-Mart Stores, Inc.*, 700 N.E.2d 212, 214-15 (Ill. App. Ct. 4th Dist. 1998); *see also Donoho*, 148 N.E.2d at 437. Accordingly, the plaintiff must demonstrate that the defendant's breach of its duty "to exercise ordinary care to keep its premises reasonably safe for the use of business invitees" caused the plaintiff's injuries. *Robinson v. Sw. Bell Tel. Co.*, 167 N.E.2d 793, 794 (Ill. App. Ct. 4th Dist. 1960). On the other hand, if the source of the unsafe condition was a third party, the defendant will be liable only if the defendant knew of the unsafe condition or would have discovered the unsafe condition through the exercise of ordinary care. *Lane*, 184 F.3d at 707.

1. Premises Liability

In support of her claim for premises liability, Little bears the burden of proving that Wal-Mart knew about a condition on its premises causing an "unreasonable risk of harm" to its customers, or would have discovered such a condition by the exercise of reasonable care. *Gentry v. Shop 'n Save Warehouse Foods, Inc.*, 708 F. Supp. 2d 733, 736-37 (C.D. Ill. 2010)

(quoting *Genaust v. Ill. Power Co.*, 343 N.E.2d 465 (1976), and Restatement (Second) of Torts § 343 (1965)). Where customers are unlikely to discover an unreasonable risk of harm on their own, or take steps to protect themselves against an unreasonable risk of harm, business owners have a duty to exercise reasonable care to protect their customers against the risk. *Id.* A defendant's knowledge of an unreasonable risk of harm can be established through either actual or constructive notice. *Id.; see also Galarnyk v. Hostmark*, No. 00 C 5784, 2001 U.S. Dist. LEXIS 11060, at *16 (N.D. Ill. July 30, 2001) (Lindberg, J.).

In this case, there is no evidence that any Wal-Mart employees actually knew of a separation, gap, or raised edge in the vestibule floor mats of the Hodgkins Wal-Mart store on February 2, 2007. There is also no evidence of prior complaints regarding such a condition, or previous accidents caused by separations, gaps, or raised edges in the vestibule floor mats.

Little argues that Wal-Mart had notice "that the mats frequently separated and created an unsafe trip hazard," because "Wal-Mart maintenance employees saw the mats separated at the seams from time to time prior to the subject occurrence." (Dkt. No. 61 ("Little's Resp.") at 8.) In support of this assertion, Little cites the testimony of Moreno and Simpson.

Little cites no cases where courts have found premises liability under circumstances similar to those in this case. However, the case of *Culli v. Marathon Petroleum Company*, cited by Wal-Mart, does suggest that constructive notice can be established by "a pattern of conduct or a recurring incident." *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123, 126-27 (7th Cir. 1988) (noting "substantial evidence presented at trial establishing that there were spills on a daily basis in the pump area"). Here, Moreno testified that approximately once per week the mats in the vestibule became separated by one-half inch. Simpson testified that two to three

7

times per year the mats became separated by one-eighth inch to one-quarter inch, and that he had seen a height difference of less than one-quarter inch or inch when one portion of the mat was raised up from another portion of the mat. Viewing this evidence in the light most favorable to Little, a reasonable fact-finder could find there was a pattern of separations, gaps, or raised edges in the vestibule floor mats of the Hodgkins Wal-Mart store, and that Wal-Mart therefore had constructive notice of an unreasonable risk of harm to its customers.[2] *Compare Gentry*, 708 F. Supp. 2d at 737 (finding no constructive notice where no evidence "that the mat had previously become buckled due to wetness or heavy foot traffic"); *Johnson,* 1999 WL 446694, at *4 (noting that evidence "the mat becomes rumpled while on the floor . . . may provide the foundation for a claim of premises liability").

Of course, to support her claim for premises liability, Little must also prove that Wal-Mart failed to exercise reasonable care in responding to this known risk. *Gentry*, 708 F. Supp. 2d at 736-37; *see also Culli*, 862 F.2d at 126 ("What is needed is a pattern of dangerous conditions which were not attended to within a reasonable period of time."). However, as discussed below, Wal-Mart has not addressed this element of Little's claim. Wal-Mart's motion

---

[2] In its reply brief, Wal-Mart argues for the first time that "the mat in this case was not being maintained in an unsafe condition" and that Wal-Mart "had no reason to think that an elevation in a seam of approximately ¼" or less was dangerous." (Dkt. No. 67 ("Wal-Mart's Reply") at 6-7.) Whether an elevated seam in the vestibule floor mats of the Hodgkins Wal-Mart store caused an unreasonable risk of harm to customers was not an issue raised in Wal-Mart's opening memorandum, and Little has not had an opportunity to address Wal-Mart's argument on this point. (*See* Dkt. No. 53 ("Wal-Mart's Mem.") at 3 (arguing only that Little "cannot establish that Wal-Mart had actual or constructive notice of the elevated seam of the mat in the vestibule area where [she] tripped").) This issue is therefore considered waived for purposes of Wal-Mart's pending motion. *See Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) ("The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues.").

to dismiss Little's claim for premises liability is therefore denied.

2.  Negligence

In its initial brief, Wal-Mart does not distinguish between Little's negligence claim and her claim for premises liability. Rather, Wal-Mart argues that it is entitled to summary judgment "as to [Little's] Complaint at Law," because Little "cannot establish that Wal-Mart had actual or constructive notice of the elevated seam of the mat in the vestibule area where [she] tripped." (Wal-Mart's Mem. 3, 7.) This is an incorrect statement of the law as it pertains to Little's negligence claim. To succeed on her negligence claim, Little must demonstrate that the floor mats at issue were "placed on the premises through the defendant's negligence." *Johnson,* 1999 WL 446694, at *3 (quoting *Wind*, 650 N.E.2d at 262).

Generally speaking, "the use of ordinary floor mats to assist pedestrians is perfectly reasonable, and the fact that a person trips on one of them is no evidence of negligence." *Robinson*, 167 N.E.2d at 796. However, "[w]hen the use of mats is not reasonable, a [defendant store owner] may be held liable for negligent acts and omissions related to installing and maintaining floor mats." *Gentry*, 708 F. Supp. 2d at 737-*38*. "The condition of the mat and the manner in which it was placed on the floor" are relevant considerations. *Johnson,* 1999 WL 446694, at *3. However, Little need not establish that Wal-Mart had actual or constructive notice of any unsafe condition regarding the floor mats to succeed on her negligence claim. *See Reed*, 700 N.E.2d at 216 (noting that employer could be liable for employee's inadvertent act, despite employee's failure to actually notice the act).

In light of Wal-Mart's failure to focus on the reasonableness of its employee's actions in its opening memorandum, it is not surprising that Little only addresses one paragraph of her

nine-page response to this issue.  (*See* Little's Resp. 6.)  Wal-Mart's argument in its reply brief that "there is absolutely no evidence that Defendant did not follow proper procedures and use proper care in <u>placing</u> the mat on the floor of the vestibule," (Wal-Mart's Reply 5 (emphasis in original)), comes too late.  *See Costello v. Grundon*, 625 F.3d 342, 363 (7th Cir. 2010) ("The party opposing summary judgment is not required to respond to grounds that were not raised by the movant.").  Because Wal-Mart's argument for summary judgment relies on what the court perceives to be a misapplication of Illinois law, Wal-Mart's motion for judgment in its favor on Little's negligence claim is denied.

## CONCLUSION

For the reasons set forth above, defendant Wal-Mart Stores, Inc.'s "Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56" (Dkt. No. 52) is denied.  The trial schedule set by this court on November 16, 2010 (Dkt. No. 59) remains in effect.  Wal-Mart's "Federal Rule of Evidence 702 Daubert Motion to Strike Christopher Janson's Expert Report and to Bar Him from Testifying" (Dkt. No. 56) remains under advisement.  Parties are strongly encouraged to discuss settlement.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: January 25, 2011